Amy HOOKANSON, Plaintiff–Appellant,

v.

Bill JONES, Commissioner, Tennessee Department of Safety, Defendant–Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 17, 1988.

Application for Permission to Appeal Denied by Supreme Court Aug. 22, 1988.

Charles R. Ray, Ray & Housch, Nashville, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Stephanie R. Reevers, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

The primary issue in this case is whether plaintiff Amy Hookanson's due process guarantees provided for by the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, § 8, of the Tennessee State Constitution were violated by having a Tennessee Highway Patrolman conduct a hearing pursuant to Tenn. Code Ann. § 55–10–406(c) to determine if Ms. Hookanson refused to take a breath-alcohol test after being placed under arrest for driving under the influence.

The second issue is whether the failure of the Metropolitan Davidson County police officer to personally appear before a notary and swear to the form as required by T.C.A. § 55–10–406 vitiates the attempt by the State to forfeit Ms. Hookanson's license for refusing to take the breath-alcohol test.

On May 23, 1985, Ms. Hookanson was involved in a traffic accident on Natchez Trace in Nashville, Davidson County, Tennessee. Officer Ed Morran of the Metropolitan Police Department arrived at the scene and determined that Ms. Hookanson, while operating her automobile, had side-swiped an automobile parked on Natchez Trace. In talking with Ms. Hookanson, Officer Morran noted that she seemed unsteady on her feet, her eyes were blood-shot, and she had the odor of alcohol about her. Additionally, she was unable to successfully comply when asked to perform a field sobriety test.

Ms. Hookanson was placed under arrest and transported to Criminal Justice Headquarters, where she was requested several times to take a breath-alcohol test. She refused and, upon her refusal, was informed that, as a consequence of her refusal, her driver's license would be suspended.

Officer Moore of the Metropolitan Police Department, who was at police headquarters when Officer Morran arrived with Ms. Hookanson, completed a form entitled "SUSPECT'S REFUSAL TO SUBMIT TO A BREATH ALCOHOL TEST" which required that his signature be notarized. Sergeant Griffin, a Notary, notarized the form. However, Officer Moore did not personally appear before Sergeant Griffin or take the required oath. Officer Moore simply told Sergeant Griffin during the changing of shifts that he was leaving the form in a box to be notarized.

Tennessee Code Annotated § 55–10–406(a) provides that any person who drives a motor vehicle in the state of Tennessee and is suspected by a law enforcement officer, having reasonable grounds, of driving under the influence of alcohol or drug is deemed to have given consent to a test for alcoholic or drug content of the blood. If the driver has been placed under arrest and refuses to submit to such a test, the commissioner shall suspend his or her operator's license. *Id.* Prior to the suspension, however, the driver is entitled to a hearing by the Department of Safety. *Id.*

Ms. Hookanson requested such a hearing and, on December 3, 1985, an administrative hearing was held before Hearing Officer Sergeant Wayne Steele of the Tennessee Highway Patrol. Ms. Hookanson, through her attorney, objected to the hearing being held by a law enforcement officer and also insisted that she had been prejudiced because of the fact that neither Officer Moore nor Morran had personally appeared before a Notary and taken an oath on the form which gave rise to the forfeiture of her operator's license in accordance with Tenn. Code Ann. § 55–10–406.

The Hearing Officer overruled the objections and, following the hearing, found that "the arresting officer had cause to arrest the petitioner, she did refuse the test and she understood the consequence of that refusal."

The final order was entered by the Commissioner of Safety on the 20th day of December, 1985, upholding the suspension of Ms. Hookanson's driver's license for a period of six (6) months for failing to submit to a breath-alcohol test in violation of Tenn. Code Ann. § 55–10–406.

On January 23, 1986, Ms. Hookanson filed a petition in the Chancery Court for Davidson County, pursuant to Tenn. Code Ann. § 4–5–322. The Chancellor affirmed the Commissioner's order after finding that the order suspending Ms. Hookanson's operator's license was "supported by substantial and material evidence."

■ Ms. Hookanson, by her first issue, contends that a Tennessee Highway Patrolman is not a neutral and detached magistrate and that for the Tennessee Highway Patrolman to conduct the hearing was a denial of her due process guarantees under the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, § 8, of the Tennessee State Constitution.

Ms. Hookanson does not allege that the Tennessee Highway Patrolman who conducted her hearing was guilty of any actual bias or had any personal interest in the outcome of the hearing. Rather, she contends that a Tennessee Highway Patrolman, as a law enforcement officer, is *per se* disqualified since in his duties as a highway patrolman he is charged with prosecuting crime and, therefore, cannot be neutral and detached in determining the credibility of the testimony of other law enforcement officers in recommending suspensior of a driver's license.

Judges and other decision makers have been held to be disqualified without a showing of actual bias where "experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable." *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). The Court, in *Withrow,* stated that these type cases can generally be categorized as those in which the decision maker (1) has a pecuniary interest in the outcome of the case, (2) has been the target of personal abuse or criticism from the parties seeking the decision maker's disqualification, (3) is directly involved in other matters concerning the litigation, or (4) may have prejudged the case because of prior participation as an accuser, investigator, fact finder, or initial decision maker. *Id.*

Judge Cantrell, writing for the Court in the unpublished opinion *Michael Pantel v. Gus A. Wood, III, Commissioner, Tennessee Department of Safety* (Tenn.App. at Nashville, November 16, 1984), after concluding that the hearing officer as a member of the Tennessee Highway Patrol was not, as a matter of law, disqualified from sitting in a driver's license revocation hearing where the issue was whether the driver refused to submit to a blood-alcohol test after being placed under arrest and asked by a law enforcement officer to submit to the test, stated:

> The probability that the hearing officer has any actual bias seems to be minute. He is not a member of the same agency as the prosecutors in the case; he has not had any personal involvement in a

prior aspect of the case; the conduct of the driver has not reflected on him personally. Therefore, we presume that [the Hearing Officer] is a man of "conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *U.S. v. Morgan,* 313 U.S. 409, 421 [61 S.Ct. 999, 1004, 85 L.Ed. 1429] (1941).

*Id.* at 4.

In *Withrow,* 421 U.S. at 35, 95 S.Ct. at 1456, a medical examining board composed of physicians was empowered to temporarily suspend a practicing physician's license at its own contested hearing on charges evolving from its own investigation. The contention was that the combination of investigative and adjudicative functions by the administrative board was a denial of procedural due process. The Court, in rejecting this contention, stated:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry [than in cases where the adjudicator has a pecuniary interest in the outcome of the case or where the adjudicator has been the target of personal abuse from the litigant]. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47, 95 S.Ct. at 1464.

In this case the highway patrolman sitting as a hearing officer neither investigates or prefers charges against the licensee. The hearing officer sits not as a law enforcement officer charged with discovering or preventing crime but as an adjudicator at a civil revocation proceeding where the petitioner is entitled to counsel; the

scope of the hearing is limited to the issue of whether the petitioner refused to submit to a test to determine the alcoholic content of her blood after having been placed under arrest and requested to do so by a law enforcement officer. There is an adequate review of the hearing officer's determination available through the administrative and/or judicial system.

This issue is without merit.

■ Ms. Hookanson's second issue is whether "the failure of the Metropolitan Davidson County Police Officer to personally appear before a Notary and swear to the form as required by T.C.A. § 55–10–406 vitiates the attempt of the State to forfeit appellant's license for refusing to take the breath alcohol test."

The officer signed the form and left it in the box for the Sergeant who actually placed his notary seal upon the form. The officer did not fullfill the formality of swearing to the report.

The statute relates to the mode of doing the act and, in the absence of a showing of prejudice, the requirements are directory and not mandatory. *See, e.g., Big Fork Mining Co. v. Tennessee Water Quality Control Bd.,* 620 S.W.2d 515, 520 (Tenn. App.1981).

Ms. Hookanson has neither alleged nor shown any actual prejudice by reason of the failure of the officer to swear to the report.

As stated by the Chancellor, the better practice would have been for the form to have been properly notarized. However, inasmuch as there was no prejudice to Ms. Hookanson, this issue is without merit.

The judgment of the Chancellor is affirmed with costs assessed to Ms. Hookanson and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.